IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


JILL RENEE OAKES,

            Plaintiff,

                                     No. 3:11-cv-00671-HZ

                                     OPINION & ORDER

      v.

SECRETARY, UNITED STATES
DEPARTMENT OF VETERAN'S
AFFAIRS, et al.,

                 Defendants.


Jill Renee Oakes
1800 Evergreen St., #7
Walla Walla, WA 99362

      Pro Se

Janice E. Hebert


1 - OPINION & ORDER

Ronald K. Silver
U.S. Attorney's Office
1000 SW Third Avenue, Suite 600
Portland, OR 97204

     Attorneys for Defendants

HERNANDEZ, District Judge:

     Jill Renee Oakes ("Plaintiff"), pro se, filed this action against the Secretary of the United States Department Of Veterans Affairs ("VA"), Melody Mikutowski ("Mikutowski"), Alice Avolio ("Avolio"), Portland VA Medical Center ("Portland VA"), and Derek Theissan ("Theissan") (collectively, Defendants) alleging sexual harassment, discrimination, wrongful termination, negligence, and retaliation.  Compl., § II(B).  Plaintiff alleges that she was not selected as a "permanent" employee of the Portland VA because of her disabilities and because she filed an Equal Employment Opportunity ("EEO") complaint.  Id., § III, Claim I.  Plaintiff also alleges that she was "sexually harass[ed]" by a "janitor named Derek Thiessen", but was ordered to "tolerate the abuse" by Avolio, her former supervisor.  Id., Claim II.  Finally, Plaintiff alleges that Avolio "refused to write [her] a letter of reference", that Avolio "failed to adequately address the sexual harassment", and that Plaintiff was "wrongfully let go" and was the only "disabled person in [her] group who was not hired."[1]  Id., Claim III.  Plaintiff seeks "full reinstatement", an award of $500,000, and "management at the Portland VA to take classes on how to properly fix a sexual harassment complaint."  Id., § IV.

     Now before me is the motion to dismiss pursuant to rule 12(b)(1) of the Federal Rules of Civil Procedure ("Rule"), or in the alternative, motion for summary judgment

---

[1] Plaintiff asserts she has "two disabilities: a completely fused neck and PTSD."  Pl.'s Mem., p. 8.

pursuant to Rule 56 (doc. #29) filed by the VA.  Also before me is the motion for

summary judgment (doc. #41) filed by Plaintiff.  For the reasons that follow, the VA's

motion to dismiss or in the alternative, motion for summary judgment (doc. #29) is

GRANTED, and Plaintiff's motion for summary judgment (doc. #41) is DENIED.

## BACKGROUND

Plaintiff worked as a Medical Support Assistant at the Portland VA in an

"Excepted Appointment" pursuant to 38 U.S.C. § 7405(a)(1).  Plaintiff's Excepted

Appointment meant that her position was merely "temporary" and was to last only from

March 16, 2008, up to April 16, 2009.[2]  Scott Decl., Ex. 1, p. 1; Id., Ex. 4, p. 4; Id., Ex. 5,

pp. 4-5; Pl.'s Mem. in Supp. of Mot. for Summ. J. ("Pl.'s Mem."), p. 1.  Near the end of

Plaintiff's temporary term, Plaintiff applied for two fulltime permanent positions at the

Portland VA: "job announcement (VX223822)" and "job announcement (VX-09-SSm-

248980)".[3]  Pl.'s Mem., pp. 4-5.

With regard to job announcement (VX223822), Plaintiff concedes that she "nor

any of her coworkers were hired permanently except Pam Stange" because "Plaintiff and

all of her un-hired coworkers . . . had not yet worked one year at the [Portland VA],

which [was] a requirement to gain a permanent position at that level . . . ."  Pl.'s Mem., p.

4.  With respect to job announcement (VX-09-SSm-248980), although Plaintiff was

selected for an interview with a panel of managers, she was ultimately not selected for the

---

[2] "According to Human Resources Officer [Mikutowski], [Plaintiff's] appointment under
38 U.S.C. § 7405(A)(1) was 'technically illegal' because such appointments were for
health care providers and [Plaintiff's] position was administrative or clerical."  Scott
Decl., Ex. 5, p. 5.
[3] Neither party states–and the record does not show–the specific job titles for job
announcements (VX223822) and (VX-09-SSm-248980).  The record, however, shows
that both job announcements were for fulltime positions and were to be filled on a
competitive basis, not a non-competitive appointment basis.

position.  Scott Decl., Ex. 8, p. 5.   After learning that she was not selected for job announcement (VX-09-SSm-248980), Plaintiff filed a Complaint of Employment Discrimination with the VA ("EEO Complaint") alleging discrimination.  Id., Ex. 3, p. 2; Id., Ex. 4, p. 1.  Specifically, Plaintiff claimed "[d]isability + [sic] [r]eprisal" on the bases that Avolio "refused to write [her] a letter of reference", that after Plaintiff told Avolio of her "EOC complaint which [she] filed in Feb [sic][,] she freaked out + [sic] became verbally abusive", that Plaintiff was the only "disabled person" not given "permanent status", and that Plaintiff did not get a permanent job with the VA because her "reference didn't check out."  Id., Ex. 3, pp. 1-2.

The VA construed Plaintiff EEO Complaint as alleging "incidents of harassment/hostile work environment" and "disparate treatment" and determined that the following allegations qualified for "investigation and further processing":

> A. Whether on the bases of disability and reprisal . . . complainant was subjected to disparate treatment on June 4, 2009 when advised by Miss Tanesia Conley, HRMS Specialist, of her non-selection for the position of Patient Services Assistant GS-6, under vacancy announcement number PVAMCDEU (VX248980).
>
> B. Whether on the bases of disability and reprisal . . . complainant was subjected to harassment/hostile work environment when:
> 1) In February 2009 and March 2009, complainant's former supervisor, Miss Alice E. Avolio, Clinical Manager, refused to write a letter of reference for the complainant.
> 2) On April 10, 2009, Miss Avolio became "verbally abusive" to the complainant after, complainant advised her that she had filed an EEO complaint; thus, Miss Avolio refused to write a letter of reference.
> 3) On June 4, 2009, complainant was advised by Miss Denise Zimmerman, former co-employee that all Ward Secretaries in complainant's former office were given permanent positions while complainant was denied the same opportunity when requested in February 2009.

4). On June 23, 2009, complainant was advised by an "OHSU" employee that she "did not get a job because her reference did not check out."

Id., Ex. 4, pp. 3-4.

After investigating Plaintiff's claims, the VA issued a Final Agency Decision on August 31, 2010, determining that "the evidence of record fail[ed] to substantiate the allegations of discrimination and/or of reprisal." Id., Ex. 5, p. 19. On September 13, 2010, Plaintiff appealed the VA's August 31, 2010, decision to the United States Equal Employment Opportunity Commission ("EEOC"). Id., Ex. 6, p. 1. The EEOC, however, affirmed the VA's final decision on March 2, 2011.[4] Plaintiff subsequently filed this pro se action on June 1, 2011.

**STANDARDS**

**I. Motion to Dismiss**

A motion to dismiss pursuant to Rule 12(b)(1) tests the subject-matter jurisdiction of the court. See White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000). "Rule 12(b)(1) jurisdictional attacks can be either facial or factual." Id. "[I]n a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." Id. Where a defendant raises a factual challenge to federal jurisdiction, as here, "the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment" and

---

[4] The EEOC also noted that Plaintiff's appeal "raised for the first time an allegation concerning incidents of sexual harassment", but advised Plaintiff to "contact an EEO Counselor" if she "wishe[d] to pursue it further" because the "issue [was] not before [it]". Scott Decl., Ex. 6, p.1.

"need not presume the truthfulness of the plaintiff's allegations". Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004) (citations omitted).

## II. Summary Judgment

Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. E.g., Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The moving party need only demonstrate that there is an absence of evidence to support the non-moving party's case. Id. at 325.

Once the moving party has met its burden, the burden shifts to the non-moving party to "set out 'specific facts showing a genuine issue for trial.'" Id. at 324 (quotation omitted). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

In deciding a summary judgment motion, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. Id. at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment ." Id. However, conclusory, speculative

testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment.  See Thornhill Publ'n Co., Inc. v. GTE Corp., 594 F.2d 730, 738 (9th Cir. 1979).

## DISCUSSION

In response to the VA's motions, Plaintiff proffers no facts and merely makes a one-line argument that she "oppose[s] the Defendant's motion to dismiss for lack of jurisdiction, or in the alternative, motion for Summary Judgment."  Pl.'s Resp., p. 1.  It is axiomatic that Plaintiff's one-line opposition to the VA's motions in this instance is an insufficient basis on which to deny the VA's motions.

I find it important to note that Plaintiff's own motion for summary judgment appears to be her actual response in opposition to the VA's motions because it responds to most, if not all, of the arguments in the VA's motions.  Even if I were to construe Plaintiff's motion as a response, however, I would still conclude that Plaintiff fails to create triable issues of fact on any of her claims.

## I. Whether Plaintiff was Not Selected in Retaliation for Her EEO Activity

Retaliation claims brought under Title VII are analyzed using the burden-shifting framework of McDonnel Douglas Corp. v. Green, 411 U.S. 792, 801-04 (1973).  Dawson v. Entek Int'l, 630 F.3d 928, 934-36 (9th Cir. 2011); Brooks v. City of San Mateo, 229 F.3d 917, 928 (9th Cir. 2000).

> To establish a prima facie case of retaliation, a plaintiff must prove (1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) there was a causal connection between the two . . . Once established, the burden shifts to the defendant to set forth a legitimate, nonretaliatory reason for its actions; at that point, the plaintiff must produce evidence to show that the stated reasons were a pretext for retaliation.

Surrell v. Cal. Water Serv. Co., 518 F.3d 1097, 1108 (9th Cir. 2008).

The VA argues that Plaintiff's claim fails because she cannot establish a causal link between her EEO activity and her non-selection for job announcement (VX-09-SSm-248980). I agree.

The undisputed evidence shows that a number of "selecting official[s]" interviewed Plaintiff for job announcement (VX-09-SSm-248980) and that they all "worked together to identify the candidates to hire".[5]  Scott Decl., Ex. 8, pp. 3-5; Id., Ex. 11, pp. 3, 5.  The record further shows that other applications were selected over Plaintiff because they were "Veterans with Veterans Preference Points" and because they had scored higher in their interviews.[6]  Id., Ex. 11, p. 6.  In fact, out of fifteen applicants, Plaintiff scored the second lowest on the Interview Matrix.[7]  Id., Ex. 9, p. 6.; Id., Ex. 11, p. 6.  Keith Keller ("Keller"), the "Clinical Manager or Head Nurse" at Portland VA and one of the "selecting official[s]" who interviewed Plaintiff for job announcement (VX-09-SSm-248980), stated that Plaintiff's interview merely "went okay" and that Plaintiff did not "have examples" concerning her "ability to work with others" and "ability to problem-solve . . . issues [with] family members[,] . . . veterans[,] or . . . coworkers."  Id., Ex. 8, pp. 3-5, 8-9.  Keller also stated that Plaintiff's answers were "short" and that in

---

[5] The record shows that the selecting officials for job announcement (VX-09-SSm-248980) were Avolio, Dawn Vidal, Julie Bunke, Keith Keller, Diane Stief, Stephen Weinberg, and Cindy Fahy.  Scott Decl., Ex. 11, p. 3.  In the interview process, selecting officials looked for, among other things, "discussion[s]" of how interviewees would "go[] about attempting to resolve or deal with conflict in the workplace".  Id., p. 7.

[6] It is undisputed that "Veterans cannot be passed over for non-Veteran applicants unless they fail to reply or decline the offer."  Scott Decl., Ex. 5, p. 8; Id., Ex. 11, p. 4.  The record shows that Plaintiff is a non-Veteran and does not have any "prior Federal employment" and therefore, does not have "Veterans Preference" and is ineligible for a non-competitive appointment with the Portland VA.  Id., Ex. 1, p. 1; Id., Ex. 5, p. 5.

[7] The Interview Matrix is a "scoring matrix" whereby interviewees were scored based on their interviews with selecting officials.  See Scott Decl., Ex. 8, p. 6; Id., Ex. 11, p. 3.

response to the question of what Plaintiff would do if "there was an issue with a coworker", Plaintiff simply stated that she "wouldn't have issues with coworkers" and that if she did, "she would just move out of the area to another workstation." Id., p. 9.

Keller expressed that he chose Plaintiff's former co-worker, Amy Olson ("Olson"), over Plaintiff because unlike Plaintiff who only scored a 21 on the Interview Matrix, Olson "scored 25 out of the possible 25". Id., p. 6; Id., Ex. 11, p. 6. Additionally, Keller explained that Olson "was able to answer the question [concerning her aptitude "to work with veterans and their family members"] with more ability" and "was able to give specific examples of customer service . . . [and] ability to work with other employees in a multidisciplinary approach". Id., Ex. 8, pp. 6-8.

The record also shows that Plaintiff had "difficulty working with other employees." Id., Ex. 11, p. 7. In particular, the undisputed evidence shows that although Plaintiff was "accidentally sprayed with cleaning solution" by a janitor in May 2008, she "became very upset and accused the [janitor] of purposefully spraying her" and even refused to "accept the [janitor's] apology." Id. The record further shows that "[f]ollowing [the incident with the janitor], the relationship between [Plaintiff and the janitor] . . . continued to deteriorate" and at one point, the janitor "reported continued instances where [Plaintiff] seemed to go out of her way to make him feel bad." Id. To resolve the situation, Avolio was forced "to assign the [janitor] to work specifically on a hall as far away from [Plaintiff's] work station as possible, where he had minimal contact with her" and had to instruct the janitor "to limit his conversation with [Plaintiff] and to . . . direct his questions to the charge nurse." Id.

The record further shows that there were questions concerning Plaintiff's ability to interact with Veterans and their family members. See Id.  For example, around March 2009, a Veteran complained that his fiancé had been treated "rudely" by an employee on "floor 6D" who self-identified herself as "Jill" when answering the phone.  Id.  Although Plaintiff denied the incident, an investigation into the matter revealed that the only "female employee on duty at that time" named "Jill" or with a "name similar to 'Jill'", was Plaintiff, "whose primary duty [was] to field incoming phone calls to the unit."  Id.

Finally, the record shows that although Avolio was aware of Plaintiff's "EEO protected activity before the selection [for job announcement (VX-09-SSm-248980)] was made", she did not interview Plaintiff for job announcement (VX-09-SSm-248980) and did not "influence the nonselection of [Plaintiff]".[8]  Id., Ex. 8, pp. 6, 9; Id., Ex. 11, p. 7. In addition, Plaintiff presents no evidence whatsoever that any of the other selecting officials, including Keller, were even aware that Plaintiff had participated in "prior EEO protected activity" when making the decision not to hire her.  Id., Ex. 8, p. 5.

In her motion for summary judgment, Plaintiff asserts that her low interview scores can be "countered by her ranked position on the Certificate of Eligibles (VX-09-SSm-02370SO)" in which she "received a rating of 100.00".  Pl.'s Mem., p. 5.  Plaintiff asserts she was the only individual with a disability who "received a score of 100.00" and who was "not selected for a permanent position", and was the "only applicant who was not selected by their [sic] own manager to become permanent on their [sic] floor."  Id.  Plaintiff also asserts that Luisia Ovsanikova ("Ovsanikova"), one of Plaintiff's former coworkers at Portland VA, "received a lower score than Plaintiff

---

[8] To make the interview process "fair across the board", interviewers were precluded from interviewing any employee they supervised.  Scott Decl., Ex. 8, p. 7; Id., Ex. 9, p. 4.

(96.00) and was still selected for permanency over Plaintiff's higher score." Id.  Plaintiff

further contends that "[Avolio] was replacing Plaintiff out of retaliation and never had

any intention to hire Plaintiff as permanent" based on the fact that Joel Todd ("Todd")

began "training to replace Plaintiff . . . two full months prior to Plaintiff's interview." Id.,

p. 6.  Although Plaintiff concedes that she "did in fact receive the second lowest score of

the fifteen total competing individuals," she maintains that her low score was "mainly

due to one interview question . . . about handling a co-worker conflict". Id.  Plaintiff

argues that in response to that question, she did not answer that she "would 'move to a

different work station'" as the VA contends because "there would be no other work

station for her to even move to, due to the set-up of her position." Id.  Plaintiff also

argues that "[t]he answer Plaintiff allegedly provided . . . does not seem to fit her

previous work ethic . . . since in her performance reviews given by [Avolio] herself,

Plaintiff received an 'Excellent' rating and was 'Fully Successful' in all elements, and the

notes provided by [Avolio] . . . ." Id.

        Plaintiff also argues that "the entire final interview process was . . . rigged". Id.,

p. 7.  Plaintiff argues that although she was interviewed by Julie Bunke ("Bunke") and

Keller[9], she "did not have the same opportunity for employment as her co-workers"

because "[Keller] wanted to retain Denise (coworker) who had been working for him as a

temp just as Plaintiff had been working for [Avolio]" and thus Plaintiff's "co-workers

---

[9] Plaintiff simply states that she was interviewed by "Julie and Keith".  Pl.'s Mem., p. 7.
It appears that Plaintiff is referring to Julie Bunke and Keith Keller, who were both
"selecting officials" who interviewed Plaintiff for job announcement (VX-09-SSm-
248980).  Scott Decl., Ex. 11, p. 3.

had already been selected by their managers prior to Plaintiff's interview".[10]  Id.  Plaintiff also asserts that "[s]ince [Keller] . . . [gave] sworn testimony that Plaintiff preformed [sic] well in her interview, it does not make factual sense for Defendants to use Plaintiff's 'low interview scores' as their main reason for her non-selection."  Id.  With respect to Bunke, Plaintiff maintains that "[i]t is . . . factually incorrect to suggest that Plaintiff was being interviewed by Julie for employment in ICU since Plaintiff does not have ICU training and was not applying for this position."  Id.  Finally, Plaintiff argues that the "most compelling" evidence is that "Dawn Videl [("Videl")] from the Human Resources Department" approved Plaintiff's termination on April 15, 2009–the date of Plaintiff's interview and last day of work.

       Plaintiff's arguments are unavailing.  Even assuming that Plaintiff has a qualifying disability, the fact that she was the only person with a disability who received a score of 100.00 and who was not selected by her own manager for a permanent position does not by itself create a triable issue of fact that Defendants retaliated against Plaintiff when deciding not to hire her as a "permanent" employee.  Rather, the evidence shows that Plaintiff was not selected for job announcement (VX-09-SSm-248980) based on other reasons, including her low interview scores.  For example, despite Plaintiff's opinion that she "preformed [sic] well in her interview", the evidence shows that Plaintiff's interview simply went "okay" and that Plaintiff was ranked as having the second lowest score out of the fifteen candidates interviewed.  Scott Decl., Ex. 9, p. 6; Id., Ex. 11, p. 6.

---

[10] The record demonstrates that "Denise" is Denise Zimmerman ("Zimmerman"), one of Plaintiff's former coworkers, who applied for and received a permanent position with the Portland VA.  Pl.'s Mem., p. 9; Scott Decl., Ex. 7, p. 2.

Even if I were to assume that Plaintiff did not state during her interview that she would handle co-worker conflicts by moving to a different workstation, that fact alone does not address the numerous other reasons supporting Plaintiff's low interview scores and Defendants' ultimate decision not to hire her.  For example, Keller explicitly stated that he did not select Plaintiff because another candidate provided better answers, Plaintiff failed to provide specific examples when answering questions, and Plaintiff's answers were short.  See Scott Decl., Ex. 8, pp. 6-9.

Additionally, the fact that Plaintiff received positive reviews prior to her interview does not create a triable issue of fact that a causal link existed in this instance.  Noted above, Plaintiff scored second to last out of fifteen candidates on the Interview Matrix, had difficulty working with other workers, and had problems interacting with Veterans and their families.  Id., Ex. 11, pp. 7-8.  Furthermore, the undisputed evidence demonstrates that the decision to not hire Plaintiff was made by a number of selecting officials who, except for Avolio, were not even aware that Plaintiff had participated in any EEO activity.  Id., Ex. 8, pp. 9-10.

Lastly, no reasonable jury could conclude that Plaintiff's interview process was "rigged" or that Avolio "replac[ed] Plaintiff out of retaliation".  Plaintiff fails to cite any evidence showing that Todd began training at the Portland VA, let alone that Todd was trained to replace Plaintiff two months before Plaintiff's interview.  Moreover, the record is clear, and Plaintiff concedes, that she only had an "Excepted Appointment" under 38 U.S.C. § 7405(a)(1), which meant that Plaintiff was only a "temporary" employee who was prohibited from working beyond April 16, 2009, in her then-current position.  Accordingly, even assuming as true that Todd began training to replace Plaintiff a few

months before her interview, that fact alone does not create a genuine issue of material

fact that Plaintiff's interview process was improper or that Plaintiff was improperly

terminated and not hired where her temporary position was statutorily set to end a few

months after Todd allegedly started training to replace Plaintiff.  Similarly, although the

evidence on which Plaintiff relies shows that Videl authorized the termination of

Plaintiff's Excepted Appointment on April 16, 2009, the evidence shows that Videl did

so because Plaintiff's temporary appointment was set to expire on April 16, 2009, not

because Defendants were retaliating against her.  Id., Ex. 1, pp. 1-2.

　　　　To the extent Plaintiff asserts Ovsanikova and Zimmerman were improperly

selected over her, such assertion fails.  A careful review of the record shows that even

though Ovsanikova "received a lower score than Plaintiff (96.00)", "Ovsanikova had a

CPS Veterans preference" and had "scored 25 points on the Interview Matrix", both of

which made Ovsanikova more preferable over Plaintiff.  Id., p. 1; Id., Ex. 5, p. 8; Id., Ex.

11, pp. 4, 6.  The record also shows that although Zimmerman and Plaintiff both received

scores of 100.00 on their Certificate of Eligibles, Zimmerman received 25 points on the

Interview Matrix, which was higher than Plaintiff's score of 21.  Id., Ex. 7, pp. 1, 2, 5;

Id., Ex. 11, p. 6.  In addition, the evidence shows that Diane Stief ("Stief"), a Head Nurse

at the Portland VA and one of the selecting officials, chose Zimmerman over Plaintiff

based on her "top level" score of "25 points" on the Interview Matrix and her previous

work experience of caring for "surgical . . . patients".  Pl.'s Mem., Ex. 3, pp. 78-79.

Indeed, the record demonstrates that Plaintiff did not receive a perfect Interview Matrix

score like Zimmerman.  Equally as important is the fact that the record is void of any

evidence showing that Plaintiff had the same or equivalent work experience as Zimmerman.

In sum, Plaintiff fails to establish a causal link between her EEO activity and her non-selection for job announcement (VX-09-SSm-248980).  Accordingly, Plaintiff's claim that she was retaliated against based on her EEO activity must be dismissed.

## II. Whether Plaintiff was Not Selected Because of Her Disability

When "the federal government is the employer in [a] matter, Section 501 of the Rehabilitation Act is implicated."  See Clement v. Dalton, 156 F.3d 1236, 1236 (9th Cir. 1998); see also 42 U.S.C. § 12111(5)(B)(i) (exempting federal government from the Americans with Disabilities Act); Smith v. Clinton, Civil No. 10-00587 LEK-BMK, 2011 WL 3290522, at *11 (D. Haw. 2011) ("The Rehabilitation Act provides the exclusive remedy for federal employees claiming discrimination based on a disability.").  "To state a prima facie case under the Rehabilitation Act, a plaintiff must demonstrate that (1) she is a person with a disability, (2) who is otherwise qualified for employment, and (3) suffered discrimination because of her disability."  Walton v. U.S. Marshals Serv., 492 F.3d 998, 1005 (9th Cir. 2007) (citation omitted).  "Section 501 borrows its substantive standards from the Americans with Disabilities Act (ADA)."  Lopez v. Johnson, 333 F.3d 959, 961 (9th Cir. 2003) (citing 29 U.S.C. § 791(g)); see also Coons v. Sec'y of U.S. Dep't of Treasury, 383 F.3d 879, 884 (9th Cir. 2004) ("The standards used to determine whether an act of discrimination violated the Rehabilitation Act are the same standards applied under the [ADA].")

The VA argues that Plaintiff fails to establish a prima facie case of discrimination based on her alleged disabilities because there is no evidence showing that any of the

selecting officials who decided not to hire her as a permanent employee knew she was

disabled.  Plaintiff asserts the VA's arguments fail because the "HR Department" at the

Portland VA knew about Plaintiff's disability upon hiring [her]" since the "HR Chief[]

(M.M.) testi[fied] . . . that when Plaintiff attended the new employee orientation, . . . [it]

was entered into Plaintiff's employee file" that "Plaintiff is a disabled person".[11]  Pl.'s

Mem., p. 8.  Plaintiff also contends that Avolio "was aware of Plaintiff's fused neck due

to [the fact that Avolio "retrieved a special chair for Plaintiff upon request"] . . . and [had]

conversations about it [with Plaintiff]" and contends that Avolio was aware of Plaintiff's

PTSD because it was "privately discussed between Plaintiff and [Avolio]."  Id.

Without deciding whether Plaintiff has legally cognizable disabilities, I conclude

that Plaintiff fails to create a genuine issue of material fact as to whether her non-

selection as a permanent employee was based on her alleged disabilities.  Other than her

bald assertion in her brief stating that she told Avolio she was disabled, Plaintiff proffers

no evidence–including any declaration–supporting her assertion.  It is also worth noting

that the fact that Avolio "retrieved a special chair for Plaintiff" does not demonstrate that

Avolio knew Plaintiff had either a physical or mental disability, let alone create a triable

issue of fact that Avolio knew Plaintiff was disabled and discriminated against Plaintiff

because of her disabilities.  Furthermore, even if I were to assume that Avolio knew

Plaintiff was disabled, there is no evidence in the record demonstrating that any of the

other selecting officials were aware that Plaintiff was disabled when they interviewed and

scored Plaintiff on the Interview Matrix or when they decided not to hire her.  Scott

Decl., Ex. 8, p. 5; Id., Ex. 11, p. 7.

---

[11] Plaintiff does not state to who "M.M." refers.  The evidence submitted by Plaintiff,
however, demonstrates that "M.M." refers to Mikutowski.

Plaintiff's assertion that Mikutowski–the former Chief of Human Resources at Portland VA–and the entire Human Resources Department at Portland VA knew Plaintiff was disabled because "it was entered into Plaintiff's employee file" when she "attended the new employee orientation" is misplaced. Plaintiff cites no evidence establishing that Mikutowski or anyone else in the Portland VA Human Resources Department played any role in the decision to not hire Plaintiff as a permanent employee. Furthermore, Plaintiff cites no evidence showing that Mikutowski told others in the Human Resources Department or any of the selecting officials that Plaintiff was disabled.[12]

In sum, there is no evidence raising a genuine issue of material fact as to whether the selecting officials chose not to hire Plaintiff as a permanent employee because she was disabled. Accordingly, Plaintiff's claim that she suffered discrimination because she was not hired on the basis of her disabilities fails.

### III. Hostile Work Environment

Title VII of the Civil Rights Act makes it an "unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e-2(a)(1). Title VII is violated "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 78 (1998) (citation and quotation marks omitted). To establish

---

[12] Notably, Plaintiff's own evidence shows that the document in which Plaintiff stated she was disabled was not kept in Plaintiff's personnel file and was "actually shredded" and "destroyed" pursuant to Portland VA procedure. Pl.'s Mem., Ex. 3, pp. 38-39.

discriminatory harassment, a plaintiff must demonstrate that the workplace environment is "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 787 (1998) (citation omitted); <u>Nichols v. Azteca Rest. Enters., Inc.</u>, 256 F.3d 864, 871-72 (9th Cir. 2001).  Relevant to the inquiry of whether Defendants' alleged conduct created an objectively hostile or abusive work environment sufficient to violate Title VII, a court looks at "all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." <u>Nichols</u>, 256 F.3d at 872 (citing <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 23 (1993)). The required level of severity or seriousness "varies inversely with the pervasiveness or frequency of the conduct." <u>Ellison v. Brady</u>, 924 F.2d 872, 878 (9th Cir. 1991).  "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." <u>Faragher</u>, 524 U.S. at 788 (internal quotation marks and citations omitted).

Plaintiff asserts "the Interrogatories that Plaintiff has yet to receive will show that a minimum of twenty-five [Portland VA] employees can state in writing that [Avolio] did use foul language, yell at many employees including Plaintiff, and made rude comments which intensified specifically after Plaintiff began making sexual harassment complaints."  Pl.'s Mem., p. 10.  Plaintiff asserts that "combined with [Avolio's] other behaviors (denial of reference, refusing to handle Plaintiffs sexual harassment allegations, etc.) and the sexual harassment itself, clearly constitutes claims for a Hostile Work

Environment." Id.  Plaintiff also contends that the fact she "was not hired permanently as she was promised due to the effects of this environment" fulfills "the requirement [that] . . . the terms and conditions of [her] employment" were altered.  Id.

Plaintiff's assertions miss the mark.  Even assuming that Plaintiff has properly alleged a hostile work environment claim under the circumstances here, Plaintiff cites no evidence demonstrating that Avolio did in fact "use foul language, yell at many employees including Plaintiff, and ma[k]e rude comments", let alone that a reasonable person could find that Avolio's alleged conduct rose to the level of permeating Plaintiff's work with discriminatory intimidation, ridicule, and insult sufficiently severe or pervasive to alter the conditions of her employment or that Avolio's alleged conduct rose to the level of creating an abusive work environment.  Furthermore, Plaintiff cites no evidence demonstrating the frequency of the alleged discriminatory conduct or that the alleged sexual harassment significantly interfered with her ability to perform her job. Finally, the fact that Plaintiff was not hired as a permanent employee after her temporary appointment expired does not establish that a reasonable person would find such action sufficiently severe and pervasive to alter the terms and conditions of Plaintiff's employment or otherwise establish that Plaintiff's work environment was sufficiently hostile or abusive in violation of Title VII.  Pl.'s Mem., pp. 1, 10; Scott Decl., Ex. 1, p. 1; Id., Ex. 4, p. 4; Id., Ex. 5, p. 4.

In sum, Plaintiff fails to raise a genuine issue of material issue of fact with respect to her hostile work environment claim.

/ / /

**IV. Exhaustion of Administrative Remedies**

The VA argues that Plaintiff's sexual harassment claim and negligence claim lack merit because Plaintiff failed to administratively exhaust her administrative remedies by filing a timely charge with the EEOC. A "plaintiff must exhaust her administrative remedies by filing a timely charge with the EEOC, or the appropriate state agency, thereby affording the agency an opportunity to investigate the charge." B.K.B. v. Maui Police Dept., 276 F.3d 1091, 1099 (9th Cir. 2002) (citing 42 U.S.C. § 2000e-5(b)).

Plaintiff concedes that her "EEOC complaint . . . did not allege sexual harassment". Pl.'s Mem., p. 2. Plaintiff, however, asserts that her failure to administratively exhaust her claims is not her fault where she "could not show all negligence on [sic] her EEOC filings because it did not become apparent to [her] that her official sexual harassment complaint . . . was not processed by [Avolio] since Plaintiff was under the impression that [Avolio] was doing her job and lodging a formal sexual harassment complaint for Plaintiff". Id., p. 11. Plaintiff also asserts that her failure to administratively exhaust her negligence claims is excusable because she was "under the impression that speaking with [Avolio] . . . was the first step to begin the process of filing a sexual harassment complaint and [Avolio's] lack of action is the cause of [her] failure to administratively exhaust her options." Id. (emphasis in original). Plaintiff further contends that she "is claiming negligence due to the fact that her serious sexual harassment complaints were not properly administratively addressed nor were they taken care of in any way, shape, or form." Id.

Plaintiff's arguments are unavailing. A careful review of the record demonstrates that Plaintiff's sexual harassment and negligence claims must be dismissed because they

were not alleged in her EEO Complaint.  See Moorer v. Meristar for Marriott, Downtown LA, 119 Fed. Appx. 180, 180 (9th Cir. 2005) ("plaintiffs must exhaust administrative remedies before seeking federal adjudication of claims") (citing EEOC v. Farmer Bros. Co., 31 F.3d 891, 899 (9th Cir. 1994)).  Furthermore, Plaintiff's erroneous assumption that Avolio was supposed to file a "formal sexual harassment complaint for [her]" by itself is insufficient to remedy Plaintiff's failure to exhaust administrative remedies. Lastly, Plaintiff's claim for negligence fails because it is only supported by a one-word allegation in her Complaint stating "negligence".  Compl., ¶ II(B).  The Complaint, however, is absent any factual allegations supporting such a claim.  Based on the above, Plaintiff's sexual harassment and negligence claims are dismissed without prejudice.  See Payne v. Peninsula Sch. Dist., 653 F.3d 863, 881 (9th Cir. 2011) ("Unlike a judgment on the merits, a plaintiff's failure to exhaust administrative remedies should result in a dismissal without prejudice.") (Citation omitted).

## CONCLUSION

For the reasons stated above, the VA's motion to dismiss or in the alternative, motion for summary judgment (doc. #29) is GRANTED and Plaintiff's motion for summary judgment (doc. #41) is DENIED.

IT IS SO ORDERED.

Dated this _____ day of _____, 2012.

MARCO A. HERNANDEZ
United States District Judge